IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KAEPER MACHINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-183C |
| v. | ) | |
| | ) | (Judge Firestone) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court enter summary judgment in our favor and deny plaintiff's motion for summary judgment because there are no genuine issues of material fact in this case and defendant is entitled to judgment as a matter of law. In support of our motion, we rely upon plaintiff's pleadings, our brief, and the accompanying Proposed Finding of Uncontroverted Facts.

I. Nature Of The Case

In 2004, Kaeper Machine, Inc. ("Kaeper") was issued a purchase order by the Defense Contract Management Agency ("DCMA") to provide 146 armored housings for use on MK44 tank recovery vehicles. DPFUF 3.[1] Kaeper was given a six week extension of the performance period but had unresolved quality control issues with its subcontractor,[2] Euclid Machine Company ("Euclid") at the expiration of that extension and did not deliver the armored housings

[1] "DPFUF__" refers to a paragraph of "Defendant's Proposed Finding Of Uncontroverted Facts," which is filed with this motion and response.

[2] This subcontractor was responsible for completion of all of the work upon on the armored housings, with no work actually performed by Kaeper.

as required. DPFUF 8, 21. Accordingly, the DCMA considered the purchase order to have lapsed and cancelled it. DPFUF 25. Kaeper has filed suit, alleging that it was improper for the DCMA to cancel the purchase order for non-delivery.

II. Statement of Facts

For our statement of facts, we respectfully refer the Court to the accompanying Proposed Finding of Uncontroverted Facts.

## LAW AND ARGUMENT

Because Kaeper failed to comply with the purchase order by not delivering the armored housings on or before their due date, DCMA properly terminated the purchase order. The delivery delays were entirely the fault of Kaeper and its subcontractor Euclid, which failed to comply with the most basic quality control requirements; produced non-compliant armored housings; and was not timely in completing tasks which were unaffected by the DCMA quality assurance inspections. To this day, Kaeper has produced no evidence that it ever produced armored housings which complied with the purchase order. Accordingly, Kaeper's complaint, which seeks a judgment directing the DCMA to accept its armored housings, should be dismissed and judgment entered in favor of the United States.

I. Standards for Summary Judgment

The familiar standards of summary judgment need only a brief re-statement here. The procedure of summary judgment is properly regarded not as a disfavored shortcut, but rather as an integral part of the Court rules as a whole, designed to secure a just, speedy and inexpensive determination of every action. Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 89 (1989)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)); accord Sweats Fashions, Inc.

v. Pannill Knitting, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987). "The focus in determining whether summary judgment is appropriate is the lack of disputed material facts. A material fact has been defined as a fact that will make a difference in the outcome of a case." Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied 361 U.S. 843 (1959). Stated differently, only disputes over facts that might affect the outcome of a suit will properly prevent an entry of judgment. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).

II. The Purchase Order Lapsed Because Kaeper Failed To Deliver The Armored Housings By The Time Specified In The Order

A. Failure To Deliver On Time Causes A Purchase Order To Lapse

A unilateral offer to purchase goods, such as the one at issue in this case, lapses when the delivery date passes and the items are not tendered for delivery. Rex Systems, Inc., ASBCA No. 45301, 93-3 BCA 26,065; Klass Engineering, Inc., ASBCA No. 22052, 78-2 BCA 13,326; see also Davies Precision Machining, Inc. v. United States, 35 Fed. Cl. 651, 667 (1996) ("Plaintiff did not meet the delivery date in the unilateral offer . . . and the offer lapsed on that date."). Although a contractor's substantial performance prior to the delivery date precludes termination without compensation by the Government before that date has arrived, that preclusion does not apply when the delivery date has passed and the contractor has not provided the ordered goods. Rex Systems.

B. Kaeper Failed To Deliver The Armored Housings By The Time Specified

It is undisputed that Kaeper failed to deliver the armored housings by October 11, 2004, the time the parties had agreed to in the amended purchase order. DPFUF 25. Moreover, even in the event that Kaeper were to make the argument that the date was a Federal holiday and delivery was impossible that date, the matter is irrelevant because Kaeper was, admittedly, in no

position to deliver the armored housings on October 12, 2004. Indeed, Kaeper informed DCMA that it could not deliver the armored housings until November 12, 2004, a full month later, DPFUF 21 , while Euclid's counsel, facing cancellation of the purchase order, conceded that more than 2/3 of the armored housings were not ready for delivery on October 12, 2004 because they had not even been painted yet. DPFUF 24. When Euclid's owner, Mr. Oh, contacted the Government quality assurance representative ("QAR"), Mr. Takacs, on October 13, 2004 to discuss an outstanding corrective action request ("CAR"), he stated that he still had not resolved the quality control issues noted therein, but that he believed he would be ready for inspection soon. DPFUF 26. On October 19, 2004, Mr. Oh contacted Mr. Takacs and stated that he was then ready for the inspection. Id. Of course, Mr. Oh's alleging that he was ready for inspection on the quality control matters is not the same as his actually passing the inspection, nor Kaeper's submitting the armored housings for delivery. Kaeper has submitted no evidence that conforming armored housings were tendered to DCMA at any date – indeed, the one inspection begun upon the armored housings before Euclid's quality assurance problems came to light demonstrated that they did not conform with the plans and specifications. DPFUF 12. Accordingly, Kaeper failed to deliver the armored housings as specified in the purchase order and that unilateral offer lapsed.

III. Kaeper Did Not "Substantially Perform" The Purchase Order And Preclude Termination

Kaeper's "Motion For Summary Judgment" advances the argument that Kaeper had "substantially performed" upon the purchase order and, thus, the purchase order could not be

considered to have lapsed. Pl. Mot. 13-15.[3] This argument is unsound because, legally, substantial performance does not protect a purchase order from lapse when the called-for items are not delivered on time; Kaeper did not substantially perform upon the purchase order; and even if Kaeper's performance upon the purchase order converted it to a contract, its failure to comply with the delivery date justified default under the applicable FAR provision.

To support its argument that substantial performance constitutes acceptance of the purchase order, Kaeper cites Federal Acquisition Regulation ("FAR") 13.004(b). Pl. Mot. 13. We do not dispute the notion that substantial performance upon the purchase order precludes the Government from cancelling, without compensation, the purchase order before the delivery date. The case law, however, provides that, even though substantial performance indicates acceptance (as provided in the FAR clause cited by Kaeper), unexcused failure to deliver on time nevertheless constitutes a lapse. See Davies, 35 Fed. Cl. at 660-61, 668 (recognizing that substantial performance constitutes "acceptance" of contract, but, nevertheless, finding that the offer lapsed when delivery date not met); Rex Systems; Klass. Thus, Kaeper's failure to deliver the armored housings on the due date caused any contract to lapse and eliminates any contractual duty upon the part of the United States.

In any event, if substantial performance created a contract and foreclosed a finding of lapse of the offer, regardless of compliance with the delivery date, Kaeper has not proven that it substantially performed. Instead, the uncontroverted facts support a finding that Kaeper did not substantially perform upon the purchase order. Timely delivery was critical, because the

---

[3] "Pl. Mot. __" refers to a page of "Plaintiff's Brief In Support Of Plaintiff's Motion For Summary Judgment."

armored housings, as Kaeper was informed, were an "URGENT REQUIREMENT!!!!!" DPFUF 2. Three work days before the armored housings were due for delivery, Kaeper informed DCMA that it needed an additional month to complete them. DPFUF 21. To that date, Kaeper's subcontractor, Euclid, had still failed to comply with the most basic of quality control criteria, and he did not even attempt to prove that he had met the quality control criteria until a week later – admitting, after the purchase order had lapsed, that he still was not prepared to demonstrate this compliance. DPFUF 26.

Kaeper's argument in its motion, that the armored housings were acceptable except for the questions about "record keeping" at Euclid, see Pl. Mot. 14, ignores the fact that the armored housings would have been rejected because of the failure for the thread gage to fit, which indicated that the holes on the housing were the wrong size. DPFUF 12. As Mr. Takacs explained, he first discovered that the armored housings were unacceptable because the thread gage did not fit in some of the corresponding holes; he never had an opportunity to address this problem again because the systemic problems with Euclid's quality control (which were far more significant than mere "record keeping"), precluded any further testing before they were resolved. DPFUF 12. To this day, Kaeper has provided no evidence that it ever produced conforming armored housings, much less that it did so in a timely fashion. By its own admission, Euclid had not submitted 100 of the armored housings to be painted by the day after the housings were due. DPFUF 24. Even had time not been of the essence (as it was here), these circumstances cannot be considered substantial performance. Franklin E. Penny Co. v. United States, 207 Ct. Cl. 842, 857, 524 F. 2d 668, 677 (1975) (30 additional days for delivery "not excusable in the sense that the contractor had substantially complied with the delivery schedule").

Finally, we note that even if Kaeper were somehow found to have substantially performed upon the purchase order and this substantial performance had the technical legal effect of precluding a lapse of the offer, the FAR authorized termination of the purchase order for default as soon as the delivery date passed. The FAR provides that:

> Under contracts containing the Default clause at 52.249-8, the Government has the right, subject to the notice requirements of the clause, to terminate the contract completely or partially for default if the contractor fails to (a) make delivery of the supplies within the time specified in the contract.

48 C.F.R. § 49.402. The solicitation for the purchase order indeed contained the Default clause referenced in FAR 52.249-8. See App. 22[4]; Atch 1[5] (included amongst clauses incorporated by reference). The notice requirements of that clause refer to circumstances in which the contractor fails to make progress, not in which the contractor fails to deliver; thus, upon a contractor's failure to make timely delivery (should this particular FAR clause be a part of the purchase order and should the delay be the fault of the contractor or subcontractor), the Government's right to issue a default is not limited. See 48 C.F.R. 52.249-8(a)(1). Kaeper, of course, failed to make a timely delivery of the armored housings; thus, even if there were a contract and even if Kaeper had substantially performed upon it, the FAR would authorize the Government to have terminated the purchase order, as it did.

---

[4] "App. __" refers to a page of the appendix submitted with "Defendant's Proposed Finding Of Uncontroverted Facts" filed today.

[5] "Atch__" refers to an attachment filed with Kaeper's "Proposed Findings Of Uncontroverted Fact."

IV. DCMA Is Not Estopped From Finding That The Purchase Order Had Lapsed

Kaeper's second and final argument blames that DCMA quality inspector for its failure to comply with the purchase order; asserts that the DCMA contracting officer's not responding immediately to an 11th-hour request for additional time was misbehavior; and insinuates that DCMA terminated the purchase order for secret reasons involving the legal problems of Mr. Oh and Euclid. Pl. Mot. 17-18. The undisputed facts do not support this claim because Euclid's breathtaking failures in quality control were not the responsibility of the Government; Kaeper's last minute request for additional time did not preclude the DCMA from taking a reasonable amount of time to consider the request; the purchase order was terminated because its time for acceptance had lapsed; and, regardless of the actions of Mr. Takacs and the contracting officer, the armored housings would not have been available for delivery upon their due date.

The undisputed facts are that Euclid failed to comply with the most basic requirements of quality control and that Mr. Takacs so informed Euclid once the scope of its problems became apparent. Mr. Takacs first inspected a batch of the armored housings on September 14, 2004 and then received the first inkling of an indication that there was a quality control problem at Euclid. DPFUF 15. The scope of this problem only became apparent after two weeks had passed. DPFUF 19. On October 5, 2004, Mr. Takacs spent a substantial amount of time assisting Mr. Oh in understanding what was necessary for proper quality control. DPFUF 20. This course of events demonstrates a QAR going out of his way to assist a contractor in understanding the most basic of concepts and demonstrates that contractor's unfamiliarity with or unwillingness to comply with such requirements. To suggest that Mr. Takacs is to blame for Euclid's failure here is to blame the messenger: the QAR is not required to educate the contractor upon quality control

basics, but to ensure that the contractor complies. Notably, Kaeper nowhere asserts that Mr. Takacs's findings were in any way incorrect or that Euclid had complied with quality requirements.

Kaeper's suggestion that Mr. Takacs's patience with Euclid was misleading, see Pl. Mot. 18, is similarly unsupported. As contractors know, the CAR process does not provide a contractor with additional time to comply with the purchase order. DPFUF 13. Indeed, this is certainly consistent with Kaeper's understanding as indicated by its late request for additional time to comply with the purchase order by virtue of its not having resolved the pending CAR. By the reasoning now espoused in Kaeper's motion, continued failure to comply with quality requirements, followed by continued attempts by the QAR to resolve the matter, would extend the performance date indefinitely.

On a like note, Kaeper's claim that it was prejudiced by the contracting officer's two-day wait to respond to its request for additional time, see Pl. Mot. 18, rings particularly hollow. Kaeper waited until three business days before delivery was due to request an additional 30 days of time to complete the armored housings. The party which was acting in an untimely manner here was Kaeper, not the DCMA. Two days to consider and reject a request for yet another delay was not unreasonable; what was unreasonable was Kaeper's waiting until the last minute to make the request and to blame the DCMA for the results of its own tardiness.

Kaeper also makes the unsubstantiated assertion that the DCMA terminated the purchase order because of a "freeze code" related to Euclid and Mr. Oh's criminal problems. Pl. Mot. 17-18. As indicated upon the termination notice, the purchase order was revoked because Kaeper failed to deliver the armored housings when they were due. DPFUF 25. Indeed, had the DCMA

wanted to punish Kaeper for its association with Euclid, it could have just as easily refused to grant the first enlargement of time, which it issued subsequent to its knowledge of Euclid's involvement with Kaeper. DPFUF 8 (contract modification dated August 27, 2004; knowledge of Euclid's involvement came July 22, 2004. Pl. Mot. 4). It obviously did not do so.

Finally, we note that, regardless of the CARs issued by Mr. Takacs, the armored housings would still have not been ready for delivery on October 11, 2004. This is because the vast majority of them were not yet painted and the painting had nothing to do with the quality inspection. DPFUF 28. Regardless of compliance with the CAR, or Mr. Takacs's having found that Euclid complied with it, Euclid was not prevented from having its armored housings painted so that they would be ready for delivery; this, it did not do. Accordingly, under no circumstances would the vast majority of the armored housings have been available for delivery on October 11, 2004, even if Mr. Takacs had turned a blind eye to all of the quality problems evident at Euclid.

CONCLUSION

Accordingly, for these reasons, we respectfully request that the Court issue summary judgment in favor of the Government and deny Kaeper's motion for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Mark D. Melnick
MARK D. MELNICK
Assistant Director

s/ J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, DC 20530
Tele: (202) 305-7586
Fax: (202) 514-7969

September 13, 2006

Attorneys for Defendant