| CONTINUATION SHEET | Solicitation Number: SP0750-04-Q-A827 | PAGE 6 | OF PAGES 13 |
|---|---|---|---|

( ) Other (CAGE, Name, Street Address, City, State and Zip Code)

Applicable to CLIN(s):

Applicable to CLIN(s):

**PACKAGING**

( ) Same as Offeror
Applicable to CLIN(s):

( ) Same as above

( ) Other (CAGE, Name, Street Address, City, State and Zip Code)

Applicable to CLIN(s):

Applicable to CLIN(s):

**E04 - ACCEPTANCE AT ORIGIN (DSCC 52.246-9C02) (NOV 1995)**

Acceptance will be performed by an authorized Government Representative at origin. The point of acceptance will be the point of last inspection before shipment unless otherwise indicated by the offeror.

NOTE: For contracts awarded on F.O.B. Destination basis, contractor must comply with FAR 52.247-48, FOB Destination -Evidence of Shipment, in order for payment to be made prior to receipt of the supplies at destination. Contracts for commercial items awarded under Part 12 procedures must be in accordance with the requirements of 52.212-5.

**E06 - MATERIAL INSPECTION AND RECEIVING REPORT (DFARS 252.246-7000) (DEC 1991)**

**E14a - HIGHER-LEVEL CONTRACT QUALITY REQUIREMENT (TAILORED ISO 9002) (FEB 1999) (DSCC 52.246-9C44)**

NOTICE:
When the Contractor is not the manufacturer of the items to be furnished, the Contractor represents it is offering to furnish items produced in a manufacturing facility conforming to the higher-level quality standard required in this purchase order/contract. When requested, either prior to award or at time of Government inspection, the Contractor shall furnish evidence to document this representation (e.g., the Contractor's purchasing system contracts and records; in-plant audits of the manufacturer's quality system by third parties; registration/certification documents; and/or other relevant supporting documents).

**E18 - PRODUCT VERIFICATION TESTING (DLAD 52.246-9004) (JUN 1998)**

**E21 - WARRANTY - ACCEPTANCE OF SUPPLIES (DSCC 52.246-9C10) (FEB 2003)**

This clause is applicable when surplus materials are accepted (DLAD 52.211-9000), when a Certificate of Conformance (FAR 52.246-15) supports or forms the basis for acceptance of supplies at origin by the Government, or when acceptance is performed by the Government at destination.

(a) The contractor warrants for a period of one year that the supplies at time of delivery conform to all contract requirements. If this warranty is breached, the Government at its option may (1) reject the supplies and require refund of contract price; or (2) require contractor at its expense to repair or replace the supplies; or (3) repair or correct the supplies and charge the contractor for the costs incurred; or (4) retain the supplies and require an equitable adjustment in the contract price. The Government shall mail or otherwise furnish notice to the contractor of the breach of this warranty within one year after date of delivery, inform the contractor of the option exercised, and require the contractor to take action accordingly. Any disputes as to the breach of this warranty shall be resolved under the Disputes clause of the contract.

(b) The contractor shall mark warranty items as required by paragraph 5.2.7, MIL-STD-129(n), 'Standard Practice for Military Marking'.

(c) The rights hereby provided the Government shall not be affected by other clauses concerning the conclusiveness of inspection and acceptance and are in addition to and do not limit any rights of the Government under other clauses of this contract.

**E23 - SUBSTITUTION OF ITEM AFTER AWARD (DSCC 52.246-9C13) (JAN 1999)**

**E28 - DOCUMENTATION OF PART NUMBER CHANGE (DSCC 52.246-9C30) (JUN 1997)**

The offer certifies that the part number (P/N) requested in the Request for Quotation (RFQ) has been changed from
CAGE -
P/N to P/N
and that this is a part number change only.
Reason for change is

**E32 - RECORDS RETENTION REQUIREMENTS (DSCC 52.204-9C01) (JUN 1980)**

**SECTION F**

**F01 - SOLICITATION CLAUSES INCORPORATED BY REFERENCE**

FAR 52.211-17 - Delivery of Excess Quantities (SEP 1989)
FAR 52.242-15 - Stop-Work Order (AUG 1989)
FAR 52.242-17 - Government Delay of Work (APR 1984)
FAR 52.247-48 - F.O.B. Destination - Evidence of Shipment (FEB 1999) (When F.O.B. Destination and Inspection/Acceptance at Origin applies)
FAR 52.247-52 - Clearance and Documentation Requirements - Shipments to DOD Air or Water Terminal Transshipment Points (APR 1984)
FAR 52.247-58 - Loading, Blocking, and Bracing of Freight Car Shipments (APR 1984)
FAR 52.247-59 - F.O.B. Origin - Carload and Truckload Shipments (APR 1984)
FAR 52.247-61 - F.O.B. Origin - Minimum Size of Shipments (APR 1984)
FAR 52.247-65 - F.O.B. Origin, Prepaid Freight - Small Package Shipments (JAN 1991)

CONTINUED ON NEXT PAGE

**F05 - SHIPPING INSTRUCTIONS (DOMESTIC) (DSCC 52.247-9C02) (MAY 2002)**

Comply with paperwork requirements of Clause D03 (DSCC 52.211-9C17), 'PACKING LIST/INVOICE/SHIPPING DOCUMENTS'.

**MAIL INSTRUCTIONS** (NOT applicable to APO/FPO addresses): Route domestic shipments within mail limitations as follows based on the TP (Transportation Priority) reflected in the 'MARK FOR' data with each CLIN. Commercial small parcel carrier (e.g., UPS or Federal Express) is an acceptable mode of shipment to domestic addresses.
(1) Ship all NMCS, 777, and 999, regardless of TP or distance, by COMMERCIAL SMALL PARCEL CARRIER.
(2) Ship TP 1 and 2 (IPD 01-08) by PRIORITY MAIL or most economical comparable mode.
(3) Ship TP 3 (IPD 09-15) and all stock locations (not TP coded) by SURFACE PARCEL POST (Fourth Class) or most economical comparable mode.
(4) The cost of parcel post insurance will NOT be paid by the Government.

**FREIGHT INSTRUCTIONS (DOMESTIC)**
(1) Ship all NMCS, 777, and 999, regardless of TP or distance COMMERCIAL SMALL PARCEL CARRIER.
(2) For TP 1 and 2 (IPD 01-08) weighing under 250 pounds, use AIR FREIGHT and specify AIR on the invoice. EXCEPTIONS: If destination is within 600 miles of origin, use regular surface transportation.
(3) For all other freight shipments contact the cognizant transportation officer for delivery and carrier routing instructions (see clause F04, DSCC 52.247-9C04).
(4) Advance telephonic notice of delivery must be given by the carrier to the Consignee's Transportation officer (Transport Control/Prelodge Desk) at least 24 hours prior to delivery of freight shipments (other than small parcels) and bills of lading must be annotated to reflect this requirement. Addresses for direct shipments within CONUS and Canada are shown 'in the clear' with each individual CLIN on Schedule Continuation Sheet(s) in each order. Addresses for stock shipments are shown with each individual CLIN on Schedule Continuation Sheet(s) in each order.

**F33 - F.O.B. - DESTINATION (FAR 52.247-34) (NOV 1991)**

**SECTION I**

**I01 - CLAUSES INCORPORATED BY REFERENCE (FAR 52.252-2) (FEB 1998)**
This contract incorporates one or more clauses by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. Also, the full text of a clause may be accessed electronically at http://www.dla.mil/j-3/j-336/logisticspolicy/procurementlinks2.htm
NOTE: If not applicable becomes self-deleting.

FAR 52.203-12 - Limitatin on Payments to Influence Certain Federal Transactions (Over $100,000) (JUN 2003)
FAR 52.209-6 - Protecting the Governments Interest when Subcontracting with Contractors Debarred, Suspended, or Proposed for Debarment (Over $25,000) (JUL 1995)
FAR 52.211-5 - Material Requirements (AUG 2000)
FAR 52.211-15 - Defense Priority and Allocation Requirements (SEP 1990)
FAR 52.215-8 - Order of Precedence - Uniform Contract Format (OCT 1997)
FAR 52.219-16 - Liquidated Damages - Subcontracting Plan (JAN 1999)
FAR 52.222-1 - Notice to the Government of Labor Disputes (Over $2,000)(FEB 1997)
FAR 52.222-3 - Convict Labor (Over MPT)(JUN 2003)
FAR 52.222-19 - Child Labor - Cooperation with Authorities and Remedies (SEP 2002) (Over MPT)
FAR 52.222-20 - Walsh-Healey Public Contracts Act (Over $10,000) (DEC 1996)
FAR 52.222-21 - Prohibition of Segregated Facilities (Over $10,000)(FEB 1999)
FAR 52.222-26 - Equal Opportunity (Over $10,000)(APR 2002)
FAR 52.222-29 - Notification of Visa Denial (JUN 2003)
FAR 52.222-35 - Affirmative Action for Disabled Veterans and Veterans of the Vietnam Era (Over $10,000) (APR 1989)
FAR 52.222-36 - Affirmative Action for Workers With Disabilities (Over $2,500) (JUN 1998)
FAR 52.222-37 - Employment Reports on Disabled Veterans and Veterans of the Vietnam Era (Over $10,000)(JAN 1999) (Applicable with FAR 52.222-35)
FAR 52.223-14 - Toxic Chemical Release Reporting (Over $100,000 applicable only to competitive non commercial acquisitions only) (AUG 2003)
FAR 52.225-13 - Restrictions on Certain Foreign Purchases (OCT 2003)
FAR 52.225-14 - Inconsistency Between English Version and Translation of Contract (FEB 2000)
FAR 52.227-1 - Authorization and Consent (JUL 1995)
FAR 52.232-1 - Payments (APR 1984)
FAR 52.232-8 - Discounts for Prompt Payment (FEB 2002)
FAR 52.232-11 - Extras (APR 1984)
FAR 52.232-23 - Assignment of Claims (Over $2,500) (JAN 1986)
FAR 52.232-25 - Prompt Payment (Over MPT) (OCT 2003)
FAR 52.233-1 - Disputes (DEC 1998)
FAR 52.233-3 - Protest After Award (AUG 1996)
FAR 52.242-12 - Report of Shipment (RESHIP) (JUN 2003)
FAR 52.243-1 - Changes - Fixed Price (AUG 1987)
FAR 52.245-1 - Property Records (APR 1984)
FAR 52.247-1 - Commercial Bill of Lading Notations (APR 1984)
FAR 52.248-1 - Value Engineering (Over $25,000) (FEB 2000)
FAR 52.249-1 - Termination for Convenience of the Government (Fixed-Price)(Short Form) (APR 1984)
FAR 52.249-8 - Default (APR 1984)
FAR 52.253-1 - Computer Generated Forms (JAN 1991)

DFARS 252.204-7002 - Payment for Subline Items Not Separately Priced (DEC 1991)
DFARS 252.204-7003 - Control of Government Personnel Work Products (MAR 2000)
DFARS 252.209-7004 - Subcontracting with Firms that are Owned or Controlled by the Government of a Terrorist Country (Over $100,000) (MAR 1998)
DFARS 252.223-7002 - Safety Precautions for Ammunition and Explosives (MAY 1994)
DFARS 252.223-7003 - Change in Place of Performance - Ammunition and Explosives (DEC 1991)
DFARS 252.225-7001 - Buy American Act and Balance of Payments Program (APR 2003)
DFARS 252.225-7002 - Qualifying Country Sources as Subcontractors (APR 2003)
DFARS 252.225-7016 - Restriction on Acquisition of Ball and Roller Bearings (APR 2003)
DFARS 252.225-7025 - Restriction on Acquisition of Forgings (APR 2003)
DFARS 252.225-7033 - Waiver of United Kingdom Levies (APR 2003)
DFARS 252.225-7036 - Buy American Act-North American Free Trade Agreement (Over $56,190) (APR 2003)
DFARS 252.225-7036 - Buy American Act-North American Free Trade Agreement w/Alternate I ($25,000 - $56,190) (APR 2003)
DFARS 252.225-7038 - Restriction on Acquisition of Air Circuit Breakers (APR 2003)
DFARS 252.225-7041 - Correspondence in English Language (JUN 1997)
DFARS 252.232-7008 - Assignment of Claims (Overseas) (JUN 1997)
DFARS 252.233-7001 - Choice of Law (Overseas) (JUN 1997)
DFARS 252.242-7000 - Post Award Conference (DEC 1991)
DFARS 252.242-7003 - Application for U.S. Government Shipping Documentation/Instructions (Use with FAR 52.242-10)(DEC 1991)
DFARS 252.243-7001 - Pricing of Contract Modification (DEC 1991)

**I04 - Y2K COMPLIANCE NOTICE (DLAD 52.239-9000) (JUN 2002)**

**I07 - PAYMENT BY ELECTRONIC FUNDS TRANSFER - CENTRAL CONTRACTOR REGISTRATION (FAR 52.232-33) (OCT 2003)**

**I11 - REQUIRED CENTRAL CONTRACTOR REGISTRATION (DFARS 252.204-7004) (NOV 2001)**

(d) Offerors and contractors may obtain information on registration and annual confirmation requirements by calling 1-888-227-2423, or via the Internet at http://www.ccr.gov.

**I12 - DISPUTES: AGREEMENT TO USE ALTERNATIVE DISPUTE RESOLUTION (JUN 2001) (DLAD 52.233-9001)**

(a) The parties agree to negotiate with each other to try to resolve any disputes that may arise. If unassisted negotiations are unsuccessful, the parties will use alternate dispute resolution (ADR)techniques to try to resolve the dispute. Litigation will only be considered as a last resort when ADR is unsuccessful or has been documented by the part rejecting ADR to be inappropriate for resolving the dispute.

(b) Before either party determines ADR inappropriate, that

CONTINUED ON NEXT PAGE

| CONTINUATION SHEET | Solicitation Number: SP0750-04-Q-A827 | PAGE 8 | OF PAGES 13 |
|---|---|---|---|

party must discuss the use of ADR with the other party. the documentation rejecting ADR must be signed by an official authorized to bind the contractor (see FAR 52.233-1, or, for the agency, by the contracting officer, and approved at a level above the contracting officer after consultation with the ADR Specialist and with legal cousel (see DLA Directive 5145.1). Contractor personnel are also encouraged to include the ADR Specialist in their discussions with the contracting officer before determining ADR to be inappropriate.

(c) If you wish to opt out of this clause, check here ( ).

**I17 - GOVERNMENT SURPLUS MATERIAL (DLAD 52.211-9000) (APR 2002)**

(a) Definition.
'Surplus material,' as used in this clause, means new, unused material that was purchased and accepted by the U.S. Government and subsequently sold by the Defense Reutilization and Marketing Service (DRMS), by contractors authorized by DRMS, or through another Federal Government surplus program. The terms 'surplus' and 'Government surplus' are used interchangeably in this clause.

(b) The Offeror agrees to complete this clause and provide supporting documentation as necessary to demonstrate that the surplus material being offered was previously owned by the Government and meets solicitation requirements. The Offeror must provide this information and any supporting documentation on or before the date that quotes/offers are due; or within the timeframe specified by the Contracting Officer, if additional documentation is requested after submission of the offer. Failure to provide the requested information and supporting documentation within the timeframe requested may result in rejection of the offer. Unless the solicitation states otherwise, Offerors of surplus material are authorized to open packages, inspect material, and reseal packages. Each time this is done, the Offeror's authorized representative or inspector must sign the packages where they were resealed and annotate the date of inspection.

(c) With respect to the surplus material being offered, the Offeror represents that:
(1) The material is new, unused, and not of such age or so deteriorated as to impair its usefulness or safety.
Yes ( ) No ( )
The material conforms to the technical requirements cited in the solicitation (e.g., Contractor and Government Entity (CAGE) code and part number, specification, etc.).
Yes ( ) No ( )
The material conforms to the revision letter/number, if any is cited.
Yes ( ) No ( ) Unknown ( )
If no, the revision offered does not affect form, fit, function, or interface.
Yes ( ) No ( ) Unknown ( )
The material was manufactured by:

____________________
(Name)

____________________
(Address)

(2) The Offeror currently possesses the material.
Yes ( ) No ( )
If no, the Offeror must attach or forward to the Contracting Officer an explanation as to how the offered quantities will be secured. If yes, the Offeror purchased the material from a Government selling agency or other source.
Yes ( ) No ( )
If yes, provide the information below:

____________________
Government Selling Agency

____________________
Contract Number

____________________
Contract Date (Month, Year)

____________________
Other Source

____________________
Address

____________________
Date Acquired (Month/Year)

(3) The material has been altered or modified.
Yes ( ) No ( )
If yes, the Offeror must attach or forward to the Contracting Officer a complete description of the alterations or modifications.
(4) The material has been reconditioned.
Yes ( ) No ( )
If yes, (i) the price offered includes the cost of reconditioning/refurbishment. Yes ( ) No ( ); and (ii) the Offeror must attach or forward to the Contracting Officer a complete description of any work done or to be done, including the components to be replaced and the applicable rebuild standard. The material contains cure-dated components.
Yes ( ) No ( )
If yes, the price includes replacement of cure-dated components. Yes ( ) No ( )
(5) The material has data plates attached.
Yes ( ) No ( ) If yes, the Offeror must state below all information contained thereon, or forward a copy or facsimile of the data plate to the Contracting Officer.
(6) The offered material is in its original package. Yes ( ) No ( ) (If yes, the Offeror has stated below all original markings and data cited on the package; or has attached or forwarded to the Contracting Officer a copy or facsimile of original package markings.)

____________________
Contract Number

____________________
NSN

____________________
Cage Code

____________________
Part Number

____________________
Other Markings/Data

(7) The Offeror has supplied this same material (National Stock Number) to the Government before. Yes ( ) No ( ) If yes, (i) the material being offered is from the same original Government contract number as that provided previously. Yes ( ) No ( ); and (ii) state below the Government Agency and contract number under which the material was previously provided:

____________________
Agency

____________________
Contract Number

(8) The material is manufacturered in accordance with a specification or drawing. Yes ( ) No ( ) If yes, (i) the specification/drawing is in the possession of the Offeror. Yes ( ) No ( ); and (ii) the Offeror has stated the applicable information below, or forwarded a copy or facsimile to the Contracting Officer. Yes ( ) No ( )

____________________
Specification/Drawing Number

____________________
Revision (if any)

____________________
Date

(9) The material has been inspected for correct part number and for absence of corrosion or any obvious defects.

CONTINUED ON NEXT PAGE

Yes ( ) No ( ) If yes, (i) Material has been re-preserved. Yes ( ) No ( ); (ii) Material has been repackaged. Yes ( ) No ( ); (iii) Percentage of material that has been inspected is % and/or number of items inspected is ; and (iv) a written report was prepared. Yes ( ) No ( ) If yes, the Offeror has attached it or forwarded it to the Contracting Officer. Yes ( No ( )

(d) The Offeror agrees that in the event of award and notwithstanding the provisions of the solicitation, inspection and acceptance of the surplus material will be performed at source or destination subject to all applicable provisions for source or destination inspection.

(e) The Offeror has attached or forwarded to the Contracting Officer one of the following, to demonstrate that the material being offered was previously owned by the Government (Offeror check which one applies):

( ) For national or local sales, conducted by sealed bid, spot bid or auction methods, a solicitation/Invitation For Bid and corresponding DRMS Form 1427, Notice of Award, Statement and Release Document.

( ) For DRMS Commercial Venture (CV) Sales, the shipment receipt/delivery pass document and invoices/receipts used by the original purchaser to resell the material.

( ) For DRMS Recycling Control Point (RCP) term sales, the statement of account or billing document.

( ) For property sold under the exchange or sale regulation, conducted by sealed bid, auction or retail methods, a solicitation/Invitation for Bid and corresponding DRMS Form 1427.

( ) When the above documents are not available, or if they do not identify the specific NSN being acquired, a copy or facsimile of all original package markings and data, including NSN, Commercial and Government Entity (CAGE) code and part number, and original contract number. (This information has already been provided in paragraph (c)(6) of this clause. Yes ( ) No ( ).)

( ) When none of the above are available, other information to demonstrate that the offered material was previously owned by the Government. Describe and/or attach.

________________________________________

________________________________________

________________________________________

(f) This clause only applies to offers of Government surplus material. Offers of commercial surplus, manufacturer's overruns, residual inventory resulting from terminated Government contracts, and any other material that meets the technical requirements in the solicitation but was not previously owned by the Government will be evaluated in accordance with the provision at 52.217-9002.

(g) Offers of critical safety items must comply with the additional requirements in 52.211-9005.

(h) If requested by the Contracting Officer, the Offeror shall furnish sample units, in the number specified, to the Contracting Officer or to another location specified by the Contracting Officer, within 10 days after the Contracting Officer's request. The samples will be furnished at no cost to the Government. All such samples not destroyed in evaluation will be returned at the Offeror's expense. The samples will be evaluated for form, fit, and function with subassembly, assembly, or equipment with which the items are to be used. End items furnished under any contract award to the Offeror furnishing the samples can include the returned samples, and all acceptable end items will have a configuration identical to the samples. If specific tests of the samples' performance are made by the Government, the Offeror will be furnished the results of such tests prior to a contract being entered into. In addition to any other inspection examinations and tests required by the contract, the performance of the end items will be required to be as good as that of the samples submitted insofar as specific performance tests have been made by the Government and the results thereof furnished to the Offeror.

(i) In the event of award, the Contractor will be responsible for providing material that is in full compliance with all requirements in the contract or order, whether or not the Contractor has possession of applicable drawings or specifications, and despite the fact that the Government is unable to conduct in-process inspection. The Contractor's responsibility to perform is not diminished by compliance with the requirement to demonstrate that the offered material was previously owned by the Government. The material to be furnished must meet the requirements of the current contract or order, whether or not the material met Government requirements in existence at the time the material was initially manufactured or sold to the Government. The Government has the right to cancel any resulting purchase order or terminate any resulting contract for default if unacceptable material is tendered.

(j) If higher level quality requirements apply to the material being acquired, those requirements do not apply to surplus material furnished under this contract.

**I18 - PRIORITY RATING (DLAD 52.211-9002)(MAR 2000)**

**I58 - HAZARDOUS MATERIAL IDENTIFICATION AND MATERIAL SAFETY DATA (FAR 52.223-3) (JAN 1997)**

**MATERIAL IDENTIFICATIONNO.** (If none, insert 'None')

**I63 - HAZARD WARNING LABELS (DFARS 252.223-7001) (DEC 1991)**

**MATERIAL ACT** (If none, insert 'None')

**I64 - MATERIAL SAFETY DATA SHEETS AND HAZARD WARING LABELS (DLAD 52.223-9000) (MAR 1992)**

(2) Check here ( ) if an MSDS accompanies your offer. Where this is the case, the MSDS must be identified to the offer, and must cite the solicitation number and the applicable CAGE code of the manufacturer, the part number, and, where so identified, the National Stock Number (NSN).

**I67 - DUTY FREE ENTRY (DFARS 252.225-7013)(APR 2003)**

**I74 - SUBCONTRACTS FOR COMMERCIAL ITEMS (FAR 52.244-6) (APR 2003)**

**I78 - CONFIGURATION CONTROL - ENGINEERING CHANGES, DEVIATIONS AND WAIVERS (DSCC 52.248-9C01)(OCT 2000)**

NOTE: MIL-STD-973 has been cancelled effective September 30, 2000 (MIL-STD-973, Notice 4), but is still required for the procurement and control of this item. Copies of MIL-STD-973, Notice 3, which includes the base document, may be obtained from: http://assist2.daps.dla.mil/quicksearch/

**I80 - AUTHORIZED DEVIATIONS IN CLAUSES (FAR 52.252-6) (APR 1984)**

**I89 - NOTICE OF TOTAL SMALL BUSINESS SET-ASIDE (FAR 52.219-6) (JUN 2003)**

( ) **ALTERNATE I** (OCT 1995)

**CONTINUED ON NEXT PAGE**

| CONTINUATION SHEET | Solicitation Number: SP0750-04-Q-A827 | PAGE 10 | OF PAGES 13 |
|---|---|---|---|

SECTION K

**K01 - SOLICITATION PROVISIONS INCORPORATED BY REFERENCE**

FAR 52.203-11 - Certification and Disclosure Regarding Payments to Influence Certain Federal Transactions (APR 1991) (Over $100,000)

DFARS 252.209-7001 - Disclosure of Ownership or Control by the Government of a Terrorist Country (MAR 1998) (Over $100,000)

DFARS 252.225-7031 - Secondary Arab Boycott of Israel (Apr 03)

DFARS 252.225-7042 - Authorization to Perform (Apr 03)

**K06 - TAXPAYER IDENTIFICATION (FAR 52.204-3) (OCT 1998)**

d. Taxpayer Identification Number (TIN).
( ) TIN: ______________
( ) TIN has been applied for.
( ) TIN is not required because:
( ) Offeror is a nonresident alien, foreign corporation, or foreign partnership that does not have income effectively connected with the conduct of a trade or business in the U.S. and does not have an office or place of business or a fiscal paying agent in the U.S.;
( ) Offeror is an agency or instrumentality of a foreign government;
( ) Offeror is an agency or instrumentality of a Federal, state, or local government;
( ) Other. State basis.

e. Type of Organization.
( ) Sole proprietorship;
( ) Partnership;
( ) Corporate entity (not tax-exempt);
( ) Corporate entity (tax-exempt);
( ) Foreign government;
( ) International organization per 26 CFR 1.6049-4;
( ) Other ______________
f. Common Parent.
( ) Offeror is not owned or controlled by a common parent as defined in paragraph (a) of this provision.
( ) Name and TIN of common parent:
Name: ______________
TIN: ______________

**K08 - DATA UNIVERSAL NUMBERING SYSTEM (DUNS) NUMBER (FAR 52.204-6) (OCT 2003)**

**K14 - DISCLOSURE OF OWNERSHIP OR CONTROL BY A FOREIGN GOVERNMENT (DFARS 252.209-7002) (SEP 1994)**

**K27 - SMALL BUSINESS PROGRAM REPRESENTATION (FAR 52.219-1) (APR 2002)**

(a)(1) The North American Industry Classification System (NAICS) code for this acquisition is 336992 .
(2) The small business size standard is 1000
(3) The small business size standard for a concern which submits an offer in its own name, other than on a construction or service contract, but which proposes to furnish a product which it did not itself manufacture, is 500 employees.
(b) Representations. (1) The offeror represents as part of its offer that it ( ) is, ( ) is not a small business concern.
(2) (Complete only if offeror represented itself as a small business concern in paragraph (b)(1) of this provision.) The offeror represents, for general statistical purposes, that it ( ) is, ( ) is not a small disadvantaged business concern as defined in 13 CFR 124.1002.
(3) (Complete only if offeror represented itself as a small business concern in paragraph (b)(1) of this provision.) The offeror represents as part of its offer that it ( ) is, ( ) is not a women-owned small business concern.

(4) [Complete only if the offeror represented itself as a small business concern in paragraph (b)(1) of this provision.] The offeror represents as part of its offer that it ( )is, ( ) is not a veteran-owned small business concern.

(5) [Complete only if the offeror represented itself as a veteran-owned small business concern in paragraph (b)(4) of this provision.] The offeror represents as part of its offer that it ( ) is, ( ) is not a service-disabled veteran-owned small business concern.

(6) [Complete only if offeror represented itself as a small business concern in paragraph (b)(1) of this provision.] The offeror represents, as part of its offer, that --
(i) It ( ) is, ( ) is not a HUBZone small business concern listed, on the date of this representation, on the List of Qualified HUBZone Small Business Concerns maintained by the Small Business Administration, and no material change in ownership and control, principal place of ownership, or HUBZone employee percentage has occurred since it was certified by the Small Business Administration in accordance with 13 CFR part 126; and
(ii) It ( ) is, ( ) is not a joint venture that complies with the requirements of 13 CFR part 126, and the representation in paragraph (b)(6)(i) of this provision is accurate for the HUBZone small business concern or concerns that are participating in the joint venture. [The offeror shall enter the name or names of the HUBZone small business concern or concerns that are participating in the joint venture:

Each HUBZone small business concern participating in the joint venture shall submit a separate signed copy of the HUBZone representation.

( ) **ALTERNATE I (APR 2002)**
(7) (Complete if offeror represented itself as disadvantaged in paragraph (b)(2) of this provision). (The offeror shall check the category in which its ownership falls):
( ) Black American.
( ) Hispanic American.
( ) Native American (American Indians, Eskimos, Aleuts, or Native Hawaiians).
( ) Asian-Pacific American (persons with origins from Burma, Thailand, Malaysia, Indonesia, Singapore, (Kampuchea), Vietnam, Korea, The Philippines, U.S. Trust Territory of the Pacific Islands (Republic of Palau), Republic of the Marshall Islands, Federated States of Micronesia, the Commonwealth of the Northern Marianna Islands, Guam, Samoa, Macao, Hong Kong, Fiji, Tonga, Kiribati, Tuvalu, or Nauru).
( ) Subcontinent Asian (Asian-Indian) American (persons with origins from India, Pakistan, Bangladesh, Sri Lanka, Bhutan, the Maldives Islands, or Nepal).
( ) Individual/concern, other than one of the preceding.

**K33 - PREVIOUS CONTRACTS AND COMPLIANCE REPORTS (FAR 52.222-22) (FEB 1999)**

The offeror represents that --
(a) It ( ) has, ( ) has not participated in a previous contract or subcontract subject to the Equal Opportunity clause of this solicitation;
(b) It ( ) has, ( ) has not filed all required compliance reports; and
(c) Representations indicating submission of required compliance reports, signed by proposed subcontractors, will be obtained before subcontract awards.

**K34 - AFFIRMATIVE ACTION COMPLIANCE (FAR 52.222-25) (APR 1984)**

The offeror represents that
(a) it ( ) has developed and has on file, ( ) has not developed and does not have on file, at each establishment, affirmative action programs required by the rules and regulations of the Secretary of Labor (41 CFR 60-1 and 60-2), or
(b) it ( ) has not previously had contracts subject to the written affirmative action programs requirement of the rules and regulations of the Secretary of Labor.

NOTE: Offeror represents that he ( ) has, ( ) has not, 50 or more employees.

**K38 - BUY AMERICAN ACT -- BALANCE OF PAYMENTS PROGRAM CERTIFICATE (DFARS 252.225-7000) (APR 2003)**

(c) Certifications and identification of country of origin.
(1) For all line items subject to the Buy American Act and Balance of Payments Program clause of this solicitation, the offeror certifies that --
(i) Each end product, except those listed in paragraphs (c)(2) or (3) of this provision, is a domestic end product; and
(ii) Components of unknown origin are considered to have been mined, produced, or manufactured outside the United States or

CONTINUED ON NEXT PAGE

a qualifying country.
(2) The Offeror certifies that the following end products are qualifying country end products:

Line Item Number: ______________________

Country of Origin: ______________________
(List only qualifying country end products.)
(3) The following end products are other foreign end products: Line Item Number, Country of Origin (If known)

______________________

______________________

**K53 - CERTIFICATION REGARDING KNOWLEDGE OF CHILD LABOR FOR LISTED END PRODUCTS (FAR 52.222-18) (FEB 2001)**

Listed End Product: RUBBER

Listed Countries of Origin: BURMA

(c) Certification. The Government will not make award to an offeror unless the offeror, by checking the appropriate block, certifies to either paragraph (c)(1) or paragraph (c)(2) of this provision.

( ) (1) The offeror will not supply any end product listed in paragraph (b) of this provision that was mined, produced, or manufactured in a corresponding country as listed for that end product.

( ) (2) The offeror may supply an end product listed in paragraph (b) of this provision that was mined, produced, or manufactured in the corresponding country as listed for that product. The offeror certifies that it has made a good faith effort to determine whether forced or indentured child labor was used to mine, produce, or manufacture such end product. On the basis of those efforts, the offeror certifies that it is not aware of any such use of child labor.

**SECTION L**

**L01 - SOLICITATION PROVISIONS INCORPORATED BY REFERENCE (FAR 52.252-1) (FEB 1998)**
This solicitation incorporates one ore more solicitation provisions by reference, with the same force and effect as if they were given in full text. Upon request, the Contracting Officer will make their full text available. The offeror is cautioned that the listed provisions may include blocks that must be completed by the offeror and submitted with its quotation or offer. In lieu of submitting the full text of the provisions, the offeror may identify the provision by paragraph identifier and provide the appropriate information with its quotation or offer. Also, the full text of a provision may be accessed electronically at the http://www.dla.mil/j-3/j-336/logisticspolicy/procurementlinks2.htm
**NOTE:** If not applicable becomes self-deleting.

FAR 52.211-14 - Notice of Priority Rating for National Defense Use (SEP 1990)

**L03 - AVAILABILITY OF SPECIFICATIONS LISTED IN THE DOD INDEX OF SPECIFICATIONS AND STANDARDS (DODISS) AND DESCRIPTIONS LISTED IN THE ACQUISITION MANAGEMENT SYSTEMS AND DATA REQUIREMENTS CONTROL LIST, DoD 5010.12-L. (FAR 52.211-2) (DEC 1999)**

Copies of specifications, standards, and data item descriptions cited in this solicitation may be obtained --

(a) From the ASSIST database via the Internet at **http://assist.daps.mil**
or
(b) By submitting a request to the --
Department of Defense Single Stock Point (DoDSSP)
Building 4, Section D
700 Robbins Avenue
Philadelphia, PA 19111-5094

L07 - AVAILABILITY OF DRAWINGS (DSCC 52.211-9C13) (JAN 2003)

The primary source for drawings, which support DSCC solicitations, is the DSCC Bid set Interface (DBI) website. The website is available through the DSCC Internet Bid Board System (DIBBS). All drawings available on the DBI website must be viewed and/or downloaded from the website. Requests for hard copy or CD-ROM copies of drawings that are available on DBI will be returned unprocessed.

Request for drawings that are listed on the DBI, as 'Restricted, Available to Authorized Vendors only', must be ordered by clicking on the 'Order via CD-ROM'. An automated order form will appear with the Solicitation # , Return by Date and NSN populating the first three fields of the form for your convenience. It is important that the 'Certification # and Certification Date' are completed on the form. Failure to provide complete information will cause delays in issuance of the requested drawing(s). All requests for restricted drawings will be provided on CD-ROM. Allow seven days for receipt of the CD. If you have any questions about your order after seven days call 614-692-1204.

To assist us in operating this website feature, we have established a vendor-interactive e-mail address at dbi-drawings(at)dscc.dla.mil. If you are reading solicitations and accessing available bid sets and discover a discrepancy between what is listed in the 'Item Description' of the solicitation and what is available in the bid set drawing list, we request that you send an e-mail message describing the discrepancy. You may advise us in instances such as, 'wrong revision level in the DBI', 'drawing(s) in the solicitation, but none in DBI', or 'additional drawings in the solicitation and not available in DBI'.

CAUTIONARY NOTE: It is your responsibility to make sure that you obtain and use the drawings and revision levels that are called out in the solicitation.

If you have any questions about the operation of the DBI website (drawing questions only), call 614-692-3207 or 614-692-1204.

**FOR LONG TERM CONTRACTS, WITH MULTIPLE NSNS, THAT REQUIRE DRAWINGS.**
To obtain the CD-ROM drawings contact the Long Term Contract Drawing Monitor via email: Leonard.gutter(at)dscc.dla.mil. Questions or comments may be directed to Leonard Gutter at 614-692-2306.

Government Specification can be acquired through the Acquisition Streamlining and Standardization Information System (ASSIST) at http://astimage.daps.dla.mil.quicksearch/.

The Government does not supply Commercial (non-government) Specification and Standards. It is the responsibility of the contractor to obtain these.

**L08 - REFERENCED SPECIFICATIONS (DSCC 52.211-9C21) (AUG 2001)**

The effective issue or revision of specifications, standards, or other documents referenced in the cited specifications or in the purchase item description (Section B) shall be that listed in the Department of Defense Index of Specifications and Standards (DODISS) available at http://assist.daps.mil that is in effect on the first day of the month in which the solicitation is issued.

**L09 - CONDITIONS FOR EVALUATION OF OFFERS OF GOVERNMENT SURPLUS MATERIAL (DLAD 52.211-9003) (APR 2002)**

(a) Definition.
'Surplus material,' as used in this provision, has the same meaning as in the clause at 52.211-9000, Government Surplus Material.

(b) The Agency will evaluate an offer of surplus material when the Contracting Officer determines the Offeror is otherwise in line for award, after adding the cost of evaluation ($200 for internal evaluation and, if applicable, an additional $500 for each Engineering Support Activity (ESA) evaluation, plus any additional fees required for special testing and/or inspection).

(c) When an offer is for a quantity less than the solicited quantity, the contracting officer will consider the $500 cost of issuing and administering more than one award. The contracting officer will also consider the anticipated impact on the unit price of the remaining quantity, to determine the total cost to the Government.

CONTINUED ON NEXT PAGE

| CONTINUATION SHEET | Solicitation Number: SP0750-04-Q-A827 | PAGE 12 | OF PAGES 13 |
|---|---|---|---|

**L17 - ALL OR NONE (DSCC 52.215-9C01) (JAN 1992)**

(a) **INDIVIDUAL CLINs**
For the individual Contract Line Item Numbers (CLINS) listed below, offers must be submitted on the total quantity of each CLIN and offers for a part of the quantity of any listed CLIN will be rejected. (For Data CLINS, see provision M24 - DLAD 52.217-9000, Data Pricing, Evaluation and Award)
CLIN(s) 0001
(b) **CLIN GROUP(s)**
For each group of Contract Line Item Numbers (CLINS) listed below, offers must be submitted on the total quantity of all CLINs within each group, and offers for less than the total quantity comprising the CLIN group will be rejected. (For Data CLINS, see provision M24 - DLAD 52.217-9000, Data Pricing, Evaluation and Award)
CLIN GROUP(s) )

**L20 - MANUFACTURING OR PRODUCTION INFORMATION (DLAD 52.217-9003) (FEB 1996)**

**L25 - AGENCY PROTESTS (DLAD 52.233-9000) (SEP 1999)**

**L41 - ACQUISITION OF FEDERAL PRISON INDUSTRIES ITEMS (DLAD 52.208-9001) (JUNE 2002)**

For items listed on the Federal Prison Industries (FPI) Schedule of Products Made in Federal Penal and Correctional Institutions, issuance of this solicitation will constitute market research. Price, quality, and delivery will be evaluated both as part of the contracting officer's award decision and as the comparability determination required by Defense Federal Acquisition Regulation Supplement (DFARS) 208.602. The award evaluation and comparability determination will be conducted using the award criteria contained in this solicitation. FPI will receive an order to fulfill this requirement if its offer is comparable to those from private-sector sources. By signing an award resulting from this solicitation, the contracting officer signifies that a comparability determination has been made.

**L42 - SET-ASIDES OF ACQUISITIONS OF ITEMS LISTED IN THE SCHEDULE OF PRODUCTS MADE IN FEDERAL PENAL AND CORRECTIONAL INSTITUTIONS (DLAD 52.219-9001) (JUNE 2002)**

For items listed on the Schedule of Products Made in Federal Penal and Correctional Institutions, when a comparability determination leads to a competitive acquisition, set-asides may be used. However, notwithstanding the inclusion of any set-aside provision or clause in this solicitation, FPI shall also be permitted to compete for, and could receive award of, the acquisition.

**SECTION M**

**M07 - AUTOMATED BEST VALUE SYSTEM (ABVS) (DSCC 52.215-9C10) (JUNE 2002)**

(a) Award against this solicitation shall be made based on a comparative assessment of offerors' prices, quoted deliveries, and past performance. Award may be made to other than the low-priced, technically acceptable, responsible offeror. The Government retains the right to award to the offeror with the lowest quoted or lowest evaluated price. Price, quoted delivery, and past performance will be evaluated equally when making a comparative analysis of offers. The past performance factor considers quality performance and delivery performance to be of equal value.

(b) Past Performance:
(1) Past performance information is maintained for performance under all procurements with the Defense Logistics Agency (DLA).** Overall performance is evaluated as is performance in each Federal Supply Class (FSC). This information is used to generate ABVS ratings which are based on the following indicators:

Delivery Delinquencies
- Number
- Severity
- Contractor caused Terminations, Cancellations, and Withdrawals

For administrative purposes, the delivery rating period excludes the most recent 60 days. For ABVS purposes, delinquent lines represent shipments not shipped and/or received in their entirety by the Contract Delivery Date (CDD). Contractor caused delivery extensions, regardless of consideration paid, will be reflected in the delivery score.

Quality Complaints
- Product Nonconformances/Laboratory Test Failures
- Packaging Nonconformances

For administrative purposes, the quality rating period excludes the most recent 30 days. Repair, replacement, or reimbursement of quality and packaging defects will not provide relief of negative ABVS data.

**The Defense Logistics Agency is developing and installing a new suite of commercial business software we call Business Systems Modernization (BSM). BSM will replace the old material management systems with the best of today's business applications. The first phase of BSM that will affect both DLA and our business partners is called the Concept Demonstration. This Concept Demonstration will use actual BSM software, real time data and actual transactions such as solicitations and awards. But because of the new software being tested, certain processes will change during the test and one of the most important is the change in ABVS. The collection of past performance information for certain NSNs in ABVS has been changed by the new software and will be affected by this Concept Demonstration beginning in July 2002.

Beginning in August 2002, ABVS will not collect performance information on NSNs that are included in this BSM test. The performance data for quality and delivery performance from new contract awards for these NSNs will not be used in the calculation of FSC scores. The contract line items will also not be included in the total number of contract line items on which the FSC score is based. Subsequently, the DLA score, which is a compilation of the FSC scores, will not include performance data from new awards on these NSNs. For NSNs, which are not in the BSM test, ABVS will continue to work as it does today.

A BSM Release One Inquiry Menu has been created which allows vendors to determine if a particular FSC or NSN is included in the initial release at: https://www.webflis.dlis.dla.mil/WEBFLIS/ASPscripts/Public_BSM.asp. Awards that will not be included in the ABVS performance data can be identified by contract numbers beginning with SPMXXX or SPEXXX, in lieu of SPOXXX. All current DLA Long Term Contracts (LTCs) with NSNs in the BSM test will be modified changing the contract number to SPMXXX. Delivery orders issued against non-DLA Basic Ordering Agreements (BOAs) and LTCs will have delivery order numbers starting with YM.

This change also means that your ABVS score in BSM will be your DLA score only; the FSC score will not be visible. This initial release will provide an opportunity for DLA, our customers, and our suppliers to use the new technology and processes to improve our supply chain effectiveness. Further information is found at the BSM Supplier Information Resource Center at http://www.dla.mil/j-6/bsm/sirc/

NOTE: The above 60 and 30 day offset periods are NOT grace periods. Contractor caused discrepancies or delinquencies will be reflected in the ABVS as an indicator of past performance.

(2) An offeror's past performance is an indicator of performance risk and will be evaluated first on the basis of past performance in the same Federal Supply Class (FSC) as the supplies being solicited. The Contracting Officer may consider the volume of business on which the performance score is based as a measure of confidence in the FSC score. A vendor's overall score may be evaluated when a satisfactory measure of confidence cannot be obtained from the FSC score or if a vendor has no FSC score. The Contracting Officer may also take into consideration any other available and relevant past performance data.

(3) An offeror with no performance history in any FSC procured by DLA will be identified as a new offeror and will not be scored by ABVS on performance. However, any other available and relevant past performance data may be considered in rendering an award decision. Regardless, the status of being a new offeror will not be grounds for disqualification for an award. New offerors may be considered more favorably than scored offerors with a poor performance record. Also, the desirability of expanding the supplier base and possible competition enhancement in future procurements will be considered in the source selection decision when new offerors are present.

(4) ABVS ratings do not determine an offeror's award eligibility, or technical acceptability, nor does it

CONTINUED ON NEXT PAGE

| CONTINUATION SHEET | Solicitation Number: SP0750-04-Q-A827 | PAGE 13 | OF PAGES 13 |
|---|---|---|---|

constitute a responsibility or non-responsibility determination.

(5) By accessing the DSCC Internet Bid Board System (DIBBS), (http://dibbs.dscc.dla.mil), each offeror will be provided the opportunity to review their ABVS scores and negative historical performance data. For any questions or challenges to negative performance data, please forward requests/challenges to an ABVS Administrator at the below cited address, or telephone/fax an Administrator at one of the provided numbers:

Mail requests to: Defense Supply Center, Columbus
ATTN: DSCC-PAMB
P. O. Box 3990
Columbus OH 43216-5010
Telephone Numbers: (614) 692-1381
(614) 692-3383
Facsimile (FAX) Number: (614) 692-4170

(6) When a discrepancy between contractor data and Government data occurs, the Government will make every effort to resolve the discrepancy expeditiously. However, the Government may make an award decision despite the existence of an unresolved challenge. The Government is the final authority for resolution of disputed data and its use in the source selection process.

(c) Price. In making an award decision, the Government may consider price as follows:
(1) Offered Price - The Government will evaluate the reasonableness of the offered price after a price analysis of offers is performed.
(2) Evaluated Price - If required, the evaluation process may include the Delivery Evaluation Factor (DEF), the Small Disadvantaged Business Concerns (SDBC) preference, and/or any other applicable price evaluation factor(s).

(d) Delivery. The quoted delivery will be evaluated in comparison with the delivery required on the solicitation.

(e) General Basis for Award. Award will be made to the offeror whose proposal conforms to the terms and conditions of the solicitation and which represents the best value to the Government. In making the best value determination, the Government will make a comparative assessment of the proposals with regard to price, delivery, and past performance. The following considerations may affect the trade-off determination:
- Whether or not an item is used in a weapons system or is a personnel support item
- Item delivery and quality history
- Inventory status
- Delivery schedule/urgency of the item
- Limited number of supply sources
- Benefits from obtaining new sources
- Difference in price

## Maynard, Rose M (DSCC)

**From:** Maynard, Rose M (DSCC)
**Sent:** Tuesday, December 30, 2003 1:59 PM
**To:** 'Kaeper Machine Inc.'
**Subject:** SP075004QA827

**Importance:** High

Attn: Kay Hwang
Kaeper Machine Inc. (1HFX2)

Urgent Requirement Urgent Requirement

Subject: SP075004QA827, RPC03251000965 NSN: 2530-832-5258

1. This is written request for verification of your entire quote.

2. Completely review your quoted prices and delivery and all elements of your quote. Provide the manufacturer's cage code and complete address. Provide verification and of all elements (includes price and delivery) of your quote; Exactly what you are quoting - list the drawing cage and drawing number and any amendments (must be in accordance to RFQ drawings, specifications and standards as solicited by DSCC DIBBS) price, delivery and all elements of your quote. Spell out and list drawing numbers and all revisions. You must be quoting in accordance to DSCC's solicitation as solicited on DIBBS. Several contractors have attempted making this item but after the award was processed the contractor could not make an item. **You need to certify and verify to the undersigned that you can in fact make this item as required by our drawings and all requirements of the RFQ for this URGENT REQUIREMENT!!!!!**

2. Submit all the above requested documentation to the undersigned via FAX no later than January 9, 2004 or your quote will not be considered in the award process.

Rose M. Maynard
Contract Specialist
Phone: 614-692-1375
FAX: 614-693-1577

# Kaeper Machine, Inc.

8680 Twinbrook Rd. Mentor, Ohio 44060
Ph: (440) 974-1010, Fx: (440) 974-8322
Email: kaeper@hotmail.com

February 12, 2004

Defense Supply Center Columbus
3990 East Board St.
Columbus, Ohio 43216-5010

Attn: Rose M. Maynard

Dear Rose:

Sincerely appreciate the opportunity you have extended to us.

We have completely reviewed our quote and re-submitting as a best & final offer with little earlier delivery date for your kind consideration.

Please find attached photo just for your information, which we printed out from our digital photo file that we took when we were machining this casting for some reseller and I think it was a for foreign military sales.

1) Our casting supplier has confirmed that they can ship first lot of casting as early as 60 days after receipt of order and balance will ship to us in 30 days after the first shipment.
2) We can prepare the fixture, our tooling that we used before while we wait for the casting, so we don't loose any time.
3) We plan to finish the machining & assemble in 70 days with 2 shift after we receive the castings and we need 7 days for painting, 15 days for Government inspection and package to ship. Our planned total days required to finish is 152 days (below includes some cusion)

NSN 2530-00-832-5258, Sol. SP075004QA827-------146 pcs. @ $867.00 each & 185 days delivery

Please call me if you need more information.

Sincerely,

Kay H. Hwang
President

Mr. Kay H. Hwang - Called
NP is not correct &
will fax correct U/P
& Delivery Rose M. Maynard
Contract Specialist

**Lavery, Betty J (DSCC)**

**From:** Haschak, Steve [Steve.Haschak@dcma.mil]
**Sent:** Tuesday, July 27, 2004 2:04 PM
**To:** Lavery, Betty J (DSCC)
**Subject:** FW: SP0750-04-M-9839 & SP0750-04-M-9712

Betty, this is the response I sent to Kaeper. Haven't heard from them yet.

-----Original Message-----
**From:** Haschak, Steve
**Sent:** Monday, July 26, 2004 11:05 AM
**To:** 'kaeper@hotmail.com'
**Cc:** Freeze, Kenneth D.
**Subject:** SP0750-04-M-9839 & SP0750-04-M-9712

Kye Hwang:

This is in response to your two (2) letters faxed to me on July 22, 2004.

**SP0750-04-M-9712:**

You requested a revision in your delivery date from August 1, 2004, to September 20, 2004. You made the same request in April 2004 to the PCO and her response was that for $898.95 consideration, it would be done. You declined that offer. This offer still stands.

You also requested that the packaging location be changed from Forest City to Cartruck. If you still want this done, let me know and we'll issue a mod.

**SP0750-04-M-9839:**

You requested that the inspection and acceptance point as well as packager be changed to Euclid Machine in Eastlake, OH. This request is denied.

Please respond at your earliest convenience.

Steve Haschak
Contract Administrator
DCMA Cleveland

Kaeper Machine, Inc.

8680 Twinbrook Road Mentor, OH 44060
Phone: 440-974-1010 FAX 440 974-8322
Email: kaeper@hotmail.com

August 4, 2004

Contracting Officer: SANDRA B. BROERMAN
Attn: DCMA CLEAVELAND
ADMIRAL KIDD CENTER
555 EAST 88th Street
BRATENAHL, OH 44108-1068

Ref: Revising Contract SP0750-04-M-9839
PRC 0321000965
NSN 2530-00-832-5258
ITEM 0001 Qty 146 Pcs

Apply to Modefication

1. Change Delivery Date.

QTY: 100 Pcs FROM: 23 – AUG -2004 TO: 11 – OCTOBER -2004

2. Packaging - Inspection and acceptance Address

From: Forest city Companies,Inc.
3607 west 56th ST
Cleveland, OH 44102-5739

TO: Kaeper Machine
8680 Twinbrook RD
Mentor, OH 44060

Sincerely,

Kye Hwang

# CORRECTIVE ACTION REQUEST
## DCMA CLEVELAND, EAST TEAM

In Reply Refer to: DCMAE-GYZA

September 20, 2004

Euclid Machine Company
Attn. Mr. James Oh, President
34201Melinz Parkway
Eastlake, Ohio 44092-1924

SUBJECT: Corrective Action Request (CAR) EM 04-09-01, Product Rejection

Mr. Oh,

1. It is requested that you reference your P.O. K-1272 from Kaeper Machine and Defense Supply Order for Supplies SP0750-04-M-9839, P/N 8676189, Housing, Suspension, FAR Clause 52.246-11 (Higher Quality Requirements), Tailored ISO9002 Quality System and FAR Clause 52.246-02 (Standard Inspection).

2. On September 14, 2004, the referenced product was rejected for the following reasons;

   A) Referenced housing would not accept the .500 -20 UNF-2B Go Thread Gage.
   B) A dial bore gage used for Government Inspection was determined to be out of calibration. This is a violation of the ISO9002 Standard, Element 4.11 (Inspection, Measuring & Test Equipment).

3. Your immediate attention to this matter is requested. It is requested that you inform the undersigned in writing by October 4, 2004 the root causes of the deficiencies noted and the corrective actions you intend to pursue.

4. If you have any questions or concerns please call (440) 918.9014, Fax (440) 585.8261 or send e-mail to Ed.Takacs@dcma.mil.

CC: Guy Stephens
Jim Hartman

Edward J. Takacs
Quality Assurance Representative

# CORRECTIVE ACTION REQUEST
## DCMA CLEVELAND, EAST TEAM

In Reply Refer to: DCMAE-GYZA

September 23, 2004

Euclid Machine Company
Attn. Mr. James Oh, President
34201Melinz Parkway
Eastlake, Ohio 44092-1924

SUBJECT: Corrective Action Request (CAR) EM 04-09-01R, Product Rejection

Mr. Oh,

1. It is requested that you reference your P.O. K-1272 from Kaeper Machine and Defense Supply Order for Supplies SP0750-04-M-9839, P/N 8676189, Housing, Suspension, FAR Clause 52.246-11 (Higher Quality Requirements), Tailored ISO9002 Quality System and FAR Clause 52.246-02 (Standard Inspection).

2. On September 14, 2004, the referenced product was rejected for the following reasons;

   A) Referenced housing would not accept the .500 -20 UNF-2B Go Thread Gage.
   B) A dial bore gage standard used to calibrate the dial bore gage used for Government Inspection was determined to be out of calibration. This is a violation of the ISO9002 Standard, Element 4.11 (Inspection, Measuring & Test Equipment).

3. Your immediate attention to this matter is requested. It is requested that you inform the undersigned in writing by October 4, 2004 the root causes of the deficiencies noted and the corrective actions you intend to pursue.

4. If you have any questions or concerns please ( or send e-mail to Ed.Takacs@dcma.mil.

SEE PARA. B ON #2 FOR DIFFERENCE BETWEEN SEP. 20 & SEP. 23

CC: Guy Stephens
Jim Hartman

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KAEPER MACHINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-183C |
| v. | ) | |
| | ) | (Judge Firestone) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DECLARATION BY EDWARD TAKACS

I, Edward J.Takacs, make the following declaration in accordance with 28 U.S.C. § 1746. I am aware that this declaration will be used in the United States Court of Federal Claims, and that this declaration is the legal equivalent to a statement under oath.

1. My name is Edward J. Takacs and I am an employee of the Defense Contract Management Agency ("DCMA"), in Cleveland, Ohio. I am a quality assurance representative ("QAR") for DCMA and have held that position for the last 17 years.

2. As a QAR, I am responsible for inspecting products which are manufactured for use by the Department of Defense ("DOD") to ensure they comply with their plans and specifications. I am assigned to several particular manufacturers in the geographical region where I work and inspect whatever items they fabricate for DOD use. If I find that an item does not comply with its specifications, I issue a Corrective Action Request ("CAR") to the contractor. A CAR identifies the deficiency and informs the contractor what needs to be done to remedy it.

3. Generally, a CAR includes a deadline for corrective action, but I will work with the contractor to give the company more time to address the matter, if it is requested by the

contractor. The decision of a QAR, like myself, to allow a contractor time to address an issue in a CAR bears no relationship, whatsoever, to the delivery deadline in a contract, which is purely within the province of the contracting officer. No QAR possesses the authority to extend delivery deadlines by virtue of issuance of a CAR. Moreover, the timing of our inspections is not driven by the delivery deadline for a contract: because we are responsible for multiple contractors, our policy is only that we will visit the contractor within seven days of being requested to do so. All contractors with whom we do business are aware of this limitation.

4. Euclid Machine Company ("Euclid") was within my area of responsibility in 2004 at the time that it manufactured the armor housings which are the subject of this litigation. On September 14, 2004, I first visited Euclid to inspect the housings it had fabricated thus far. What I observed gave me great cause to be concerned that the housings would not comply with their specifications and would fail in the field.

5. Upon my arrival at Euclid that day, we randomly selected an armored housing for my inspection. The first problem that I encountered was that the appropriate thread gage did not fit into the threaded bolt holes on this housing. In simplified terms, a thread gage is a standard, which is used to ensure that the corresponding hole on a manufactured item is of the correct size. If a thread gage does not fit into its corresponding hole, then it is unlikely that the corresponding bolt will fit the hole in the field and the item may be useless. Mr. Oh, the owner of Euclid, was present when I attempted to utilize the thread gage in the armored housing that his company had manufactured. For several of the holes, the corresponding gage only fit after Mr. Oh made extensive efforts remove debris and otherwise intervene. Ultimately, however, the thread gage would not fit into some of the corresponding holes, no matter what efforts Mr. Oh made. I then

informed Mr. Oh that I would reject the parts and issue a CAR to Euclid.

6. After the armored assembly failed the thread gage test, Mr. Oh requested that I complete the inspection of the armored assembly to ensure that it had no other failures. For the next part of the inspection, we were to use a dial bore gage, which is a very precise standard used to measure the size of unthreaded holes. I immediately noticed that the dial bore gage (owned and maintained by Euclid, as required), was not current in its calibration. This is important because, over time, a dial bore gage (like many precision instruments, including the thread gage I discussed earlier) can vary, and lose its ability to accurately measure the hole to be inspected. In accordance with well-known industry standards, dial bore gages must be calibrated regularly – generally, every few months. Mr. Oh showed me the written policy for Euclid, which provided that the dial bore gages would be calibrated every 6 months. Euclid, however, had not complied with its policy for the dial bore gages Mr. Oh produced for this inspection. Because the dial bore gages were out of calibration, I could not continue with the remainder of the inspection. This failure to comply with calibration standards was an additional reason to fail Euclid, and I explained it to Mr. Oh at that time. He said he understood.

7. On September 17, 2004, Mr. Oh sent me a picture of the dial bore gages with inspection stickers on them, apparently to indicate that he had calibrated his gages.

8. I issued a written CAR on September 20, 2004, which reflected what I had told Mr. Oh, in person, on September 14.

9. Mr. Oh responded to the written CAR on September 22, 2004 and I recognized that he apparently did not understand my September 20, 2004 written CAR, because he did not recognize that the bore gage standard was out of compliance. I issued a follow-on CAR on

September 23, 2004 to make this more clear for Mr. Oh.

10. Mr. Oh responded to my September 23, 2004 CAR with a facsimile, sent on Friday, September 24, after the close of business, when I had left for the day. I visited Euclid during the following week and recognized that Mr. Oh still did not understand the importance of calibrating his bore gages or how he was expected to do so; moreover, I recognized that Euclid's quality control problems were far more extensive than I had initially suspected because the calibration equipment had not been maintained as required. In order to accurately calibrate thread and dial bore gages, one uses gage block sets. Gage block sets must be independently certified as being within calibration on an annual basis and they are required to be kept in controlled environments free of dust and large temperature swings. Euclid's gage block sets had not been certified since some time in 2000 and were not kept in a controlled environment. This invalidated any calibration of gages performed upon them; in turn, making Euclid's thread and bore gages useless for quality control. The state of Euclid's gage block sets surprised me because proper certification of these sets is one of the most basic requirements of quality control. I provided Mr. Oh a calibration checklist during this visit and explained to him how to use it, directing that he remedy the situation immediately.

11. On October 5, 2004, I visited Euclid to see if Mr. Oh had remedied the calibration issues. We went through the calibration checklist together and I explained to Mr. Oh where he had failed. I issued a written CAR to Euclid that day, explaining his failure. To this point, Mr. Oh had not demonstrated resolution of the problems with the holes on the armored housings because he never had a thread or bore gage that met the required standards.

12. On Thursday, October 7, 2004, Mr. Oh contacted my superior, Mr. Stephens, to arrange another meeting to address the outstanding CAR. I was in a class that day, but telephoned Mr. Oh in the evening. I informed Mr. Oh that I was not available the following day (a Friday, I was on leave) or Monday, October 11, 2004, which was a Federal holiday. I agreed to speak with him on October 12, 2004 to arrange an inspection to see if he had complied with the outstanding CAR.

13. Early on the morning of On October 12, 2004, Mr. Oh and I scheduled an inspection meeting for the following day.

14. On October 13, 2004, Mr. Oh telephoned me and asked me for an extension of time to address the CAR because other matters had demanded his attention and that, although he was close to being finished with it, he was not yet ready. On October 19, 2004, Mr. Oh telephoned me and told me that he was ready to meet to close the CAR.

15. I was never presented the armored housings for final inspection by Euclid or Kaeper.

16. I understand that a number of the housings were not yet painted at the time of the purchase order's termination. There would have been no reason for Euclid to await resolution of my CAR before submitting the housings for painting because the gage tests can be performed equally well on painted and unpainted housings. Indeed, a painted housing would be preferred because it would match the conditions in the field.

I have read the foregoing six page declaration and I certify under penalty of perjury that it is true and correct.

s/ Edward J. Takacs
Edward J. Takacs
Quality Assurance Representative
Defense Contract Management Agency

Executed this 11th day of September, 2006.