IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| KAEPER MACHINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 05-183C |
| v. | ) | |
| | ) | (Judge Firestone) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF ITS**
**CROSS-MOTION FOR SUMMARY JUDGMENT**

In our cross-motion for summary judgment, we demonstrated that the Defense Contract Management Agency ("DCMA") cancelled its purchase order for 146 armored housings with plaintiff, Kaeper Machine, Inc. ("Kaeper") because Kaeper had not delivered the armored housings by the specified date, causing the order to lapse. We further demonstrated that this action was in compliance with the contract, the law, and the applicable Federal Acquisition Regulation ("FAR") provisions. Kaeper's response essentially concedes the DCMA's legal authority to cancel the purchase order, but argues that the Government should be estopped from doing so in this case. Because Kaeper cannot dispute the facts set forth in the declaration of Mr. Ed Takacs, the Government's quality assurance representative ("QAR"), which soundly proved that Kaeper's problems in meeting the deadline were caused by glaring and systematic quality control flaws with Kaeper's subcontractor, Euclid Machine Company ("Euclid"), Kaper's motion for summary judgment should be denied and the Government's cross-motion for summary judgment should be granted.

I. The Purchase Order Lapsed Because Kaeper Failed To Deliver The Armored Housings By The Time Specified In The Order

Our cross-motion for summary judgment demonstrated that, by law, a unilateral offer to purchase goods (such as the purchase order here), lapses when the delivery date passes and the items are not tendered for delivery. Rex Systems, Inc., ASBCA No. 45301, 93-3 BCA 26,065; Klass Engineering, Inc., ASBCA No. 22052, 78-2 BCA 13,326; see also Davies Precision Machining, Inc. v. United States, 35 Fed. Cl. 651, 667 (1996). Kaeper does not dispute this statement of law, whatsoever, in its response brief. Our cross-motion for summary judgment also demonstrated that Kaeper had, indeed, failed to deliver the armored housings on time and was unable to deliver them in the days following the delivery date. Kaeper does not dispute these facts, either. Thus, except for its estoppel argument, which we will address later herein, Kaeper does not dispute the DCMA's determination that the purchase order had lapsed.

II. Kaeper Did Not "Substantially Perform" The Purchase Order And Preclude Termination

In Kaeper's original "Motion For Summary Judgment," it advanced the argument that Kaeper had "substantially performed" upon the purchase order and, thus, the purchase order could not be considered to have lapsed. Pl. Mot. 13-15.[1] Our cross-motion for summary judgment demonstrated this argument to be unsound because, legally, substantial performance does not protect a purchase order from lapse when the called-for items are not delivered on time; Kaeper did not substantially perform upon the purchase order; and even if Kaeper's performance upon the purchase order converted it to a contract, its failure to comply with the delivery date justified default under the applicable FAR provision.

[1] "Pl. Mot. __" refers to a page of "Plaintiff's Brief In Support Of Plaintiff's Motion For Summary Judgment."

Except for its allegation regarding estoppel, Kaeper does not dispute any of these arguments. Accordingly, it must concede that its alleged "substantial performance" did not preclude the DCMA's actions here.

## III. DCMA Is Not Estopped From Finding That The Purchase Order Had Lapsed

Kaeper's response to our cross-motion for summary judgment is essentially a mere reprisal of its earlier allegations that the DCMA should have been estopped from cancelling the purchase order because: 1) it hid from Kaeper its intention to never accept delivery of the armored housings, Pl. Rep. 1-2 [2]; 2) the QAR led Kaeper and Euclid to believe that they would have additional time to complete the housings, Pl. Rep. 4-6; and 3) the QAR was responsible for Euclid's delays in producing the housings. Pl. Rep. 4. As we demonstrated in our earlier motion and proved with Mr. Takacs's unrefuted declaration, these allegations, based completely upon innuendo, are meritless. Kaeper's failure to deliver the armored housings was due to its subcontractor's wholesale non-compliance with quality control requirements and, regardless of the availability of the QAR to accept the armored housings, the majority were admittedly not completed at the time that they were due.

### A. The Contracting Officer Did Not "Freeze" The Purchase Order

Kaeper's allegation that the contracting officer made the decision to "set-aside [the armored housings] on a shelf" without informing Kaeper, see Pl. Rep. 2, is quite simply unsupported and false. As we noted in our response to Kaeper's "Proposed Findings Of Uncontroverted Fact," Kaeper's "evidence" of this freeze is an e-mail from Ms. Lavery, merely

---

[2] "Pl. Rep. __" refers to a page or pages of "Plaintiff's Opposition To Defendant's Cross-Motion For Summary Judgment."

inquiring whether a "freeze code" would be appropriate under the circumstances. PPFUF Opp. 7[3]. This simple inquiry does not support Kaeper's allegation of the later imposition of secret restrictions by the Government. This is especially so because of the "strong presumption" that Federal employees act in good faith Am-Pro Protective Agency, Inc. v. United States, 281 F.3d 1234, 1239-40 (Fed. Cir. 2002). Of course, the DCMA's willingness to allow Kaeper's first requested extension of time, sought after the DCMA became aware of Euclid's role in the contract, demonstrates that DCMA continued to act in good faith through the lifetime of the contract. See DPFUF 8[4] (contract modification dated August 27, 2004; knowledge of Euclid's involvement came July 22, 2004. Pl. Mot. 4).

B. Mr. Takacs Did Not Mislead Kaeper Regarding The Delivery Date

Under no circumstances did any words or actions of Mr. Takacs mislead Kaeper or Euclid regarding their delivery obligations; nor did his unavailability to perform inspection before October 13, 2004 prejudice Kaeper. Kaeper does not dispute the fact that a QAR, such as Mr. Takacs, lacks the authority to extend the delivery date. See DPFUF Resp. 13.[5] Nor does Kaeper refute our statement that the time given to respond to Corrective Action Requests ("CARs") has no bearing upon the delivery deadline. Id. Thus, Mr. Takacs's initial agreement to meet with Euclid after the delivery date would not have given Kaeper or Euclid any reason to believe that the delivery date would be extended. To the contrary, Euclid and Kaeper knew that

---

[3] "PPFUF Opp. __" refers to a paragraph of our earlier-filed "Defendant's Response To Plaintiff's Proposed Findings Of Uncontroverted Fact."

[4] "DPFUF__" refers to a paragraph of our earlier-filed "Defendant's Proposed Findings Of Uncontroverted Facts."

[5] "DPFUF Resp. __" refers to a paragraph of "Plaintiff's Response To Defendant's Proposed Findings Of Uncontroverted Fact."

they needed to seek and obtain permission for an extension of time for the delivery: Kaeper's consultant, Mr. Jeffries requested a month-long extension of time on October 6, 2004, DPFUF 21, and Euclid's general counsel requested additional time from the DCMA to complete the delivery on October 12, 2004. DPFUF 24. In any event, regardless of when Mr. Takacs was available to meet with Euclid to inspect the armored housings, they were plainly not ready on the 11th or 12th of October. Kaeper sought an additional month to complete them just a few days beforehand because it believed it would need the additional time to address the quality control issues, DPFUF 21; more than 2/3 of the housings were not even painted on October 12, DPFUF 24; and Euclid's owner, Mr. Oh, did not believe himself ready to address the CAR quality issues until October 19, 2004 at the earliest. DPFUF 26.

C. Mr. Takacs Was Not Responsible For Kaeper's Breach Of The Purchase Order

The undisputed facts demonstrate that Euclid's quality control process was broken at the time that Euclid was working upon the armored housings. DPFUF 15-20. The facts also demonstrate that the extent of Euclid's quality control failures only became evident to Mr. Takacs upon meetings with Mr. Oh subsequent to the first failed inspection. DPFUF 19, 20. The record demonstrates that Mr. Takacs went out of his way to assist Mr. Oh in fixing the problem at Euclid, doing such things as reviewing basic quality control checklists with him. Id. Nevertheless, Kaeper attempts to shift responsibility for Euclid's failures to Mr. Takacs, suggesting that he was taking an overly long time to address Euclid's quality control problems, which were allegedly related to mere "record-keeping." Pl. Mot. 4. Kaeper has provided no explanation why it should be the Government QAR's burden to teach basic quality control to a contractor, like Euclid. Nor has Kaeper provided any support for its suggestion that Mr. Takacs

acted in a dilatory way – Euclid was the party which continually requested more time to address the quality control matters and, despite Mr. Oh's October 7 telephone call to Mr. Takacs, he did not purport to actually be ready for inspection until October 19. DPFUF 26. Moreover, as explained in our uncontroverted facts, Euclid's failures were more than just "record keeping" and called into question the ability to determine whether the armored housings would work in the field. DUFUF 15-19.

Finally, we note that, if Euclid's quality control problems were nothing but "record-keeping" matters, they would not have prevented Kaeper from presenting the completed armored housings for inspection on October 11 or 12, 2004. Instead, the majority of the housings were not even painted on October 12, even though awaiting quality control inspections would not prevent such painting from being performed. DPFUF 28. Moreover, if the only issue preventing acceptance of the armored housings was a mere matter of paperwork, there would have been no need for Kaeper to request an additional month to deliver the assemblies. DPFUF 21.

CONCLUSION

Accordingly, for these reasons and the reasons in our earlier cross-motion for summary judgment, we respectfully request that the Court issue summary judgment in favor of the Government and deny Kaeper's motion for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Mark D. Melnick
MARK D. MELNICK

Assistant Director

s/ J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, NW
Washington, DC 20530
Tele: (202) 305-7586
Fax: (202) 514-7969

October 10, 2006

Attorneys for Defendant